JOSEPH HUTCHINSON, Plaintiff, *v.* THE SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF THE WORLD, Defendant.

*Mutual benefit associations — contract of membership and endowment — total permanent disability — amendment to the constitution of the association.*

A reply, by the general active officer of a fraternal and mutual benefit association, to a request of a member for blanks on which to make proof of a disability, that it was useless for the member to submit proofs of disability, as his claim would be rejected, constitutes a waiver on the part of the association of the obligation to present proofs of disability, and of a compliance with the formal procedure required by the association to perfect the member's claim.

A certificate of membership in a fraternal and mutual benefit association provided that, in case of permanent or total disability, the member would be entitled to receive one-half of the endowment, as provided in the laws of the order; the member, in his application for membership, agreed that the constitution of the order should, with his application, form the basis of his contract for endowment.

The constitution provided that "a total and permanent disability to perform or direct any kind of labor or business, or upon reaching the age of seventy years, shall entitle a member holding a certificate of endowment so disabled or aged to the payment of one-half of the endowment to which he would be entitled at death."

A member, who was a railroad switchman, accidentally lost all the fingers of one hand, in coupling cars, and brought an action against the association to recover one-half of the amount of the endowment.

| 68 | 355 |
| 78 | 106 |
| 68 | 355 |
| 92 | 281 |

| 68h | 355 |
| 37 | Mis⁴408 |

| 68h | 355 |
| d 74 AD⁷533 |

| 68h | 355 |
| 78 AD⁹549 |

*Held,* that the constitution of the association was a part of the contract between the parties;

That, under the definition furnished by it, a disability that would entitle the plaintiff to recover, must be not only permanent, but total, so as to render him unable to perform or direct any kind of labor or business; and that ordinarily the loss of the fingers of a hand does not constitute total disability for the performance of any kind of labor or business;

That a total disability is ordinarily a question of fact for the jury, and must be determined from the facts and circumstances disclosed in each case; and, hence, that it was error to direct a verdict for the plaintiff for the amount of one-half the endowment.

After the issuance of the membership certificate in suit and before the occurrence of the disability of the plaintiff, the constitution of the association was changed, in the method provided by the original constitution, by representatives of the members, in the election of whom the plaintiff, as a certificate holder, was entitled to vote; this amended constitution provided that "a member who, by reason of a disability incurred after admission to endowment membership, becomes unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood, shall be deemed entitled to disability benefits," which are stated to be "annually one-tenth part of the sum for which his endowment certificate is issued."

*Held,* that the amendment, when made, became operative and binding upon the plaintiff, and became a part of his contract, and that his right to recover should be determined thereby. That as the evidence showed that the plaintiff was totally disabled from performing the duties of a railroad switchman, and that for many years he had been engaged in that kind of labor, the verdict in his favor should be modified by reducing it to the amount of the first installment of one-tenth his endowment falling due, with interest thereon from the commencement of the action.

MOTION by the defendant, the Supreme Tent of the Knights of the Maccabees of the World, for a new trial, on exceptions taken at a trial at the Erie Circuit, which resulted in a verdict for the plaintiff, by direction of the court, ordered to be heard in the first instance at the General Term, by an order made on the 19th day of February, 1892.

*Frank R. Perkins,* for the defendant.

*Harlow C. Curtiss,* for the plaintiff.

HAIGHT, J.:

This action was brought by the plaintiff for the purpose of recovering $1,000 on account of a disability occasioned by the loss of the fingers upon one of his hands. The defendant is incorporated

under the laws of the State of Michigan as a fraternal and mutual benefit association. Its chief purpose is that of insuring its members against death or accident. Its principal organization and its branches are called tents, and known respectively as the supreme tent and subordinate tents. On the 3d day of February, 1886, the plaintiff applied to be admitted as a member of the association at Beaver Tent No. 4, at the city of Toronto, where he was then living. His application was approved, and on the tenth day of March thereafter, a certificate was issued to him by the defendant providing as follows: " This certifies that Sir Knight Joseph Hutchinson is a member of Beaver Tent No. 4, located at Toronto, Ont., and that he is a beneficiary in good standing; that in accordance with and under the provisions of the laws governing the order, he is entitled to receive one assessment on the membership, but not exceeding in amount the sum of two thousand dollars, as a benefit to Susan Hutchinson, his wife, upon satisfactory proof of his death and the surrender of this certificate, provided he shall have in every particular complied with all the rules and regulations of this order. In case of permanent or total disability, or upon attaining the age of seventy years, he will be entitled to receive one-half of said endowment as provided in the laws of the order."

Subsequently he removed to the city of Buffalo, and was thereupon transferred to Macedonian Tent No. 85, one of the defendant's subordinate tents at Buffalo. And continued to be a member of the order in that tent in good standing until the 1st day of November, 1889, when he received an injury to his hand in coupling cars, which necessitated the amputation of the fingers of the right hand. He then called upon one C. W. Hinson, an attorney, and an officer of the Macedonian Tent, to procure for him the money that he was entitled to under the certificate of membership. Thereupon Hinson wrote a letter to M. S. Boynton, the supreme record keeper of the defendant's order, at Port Huron, Mich., asking for the necessary blanks upon which to make proof of the plaintiff's disability. Boynton, in reply thereto, said that " As the loss of a leg, or hand, or eye, does not constitute a total and permanent disability under our laws, it would be useless sending blank to fill out for a disability claim. It would only be rejected." Thereupon this action was brought.

It is claimed that this action was prematurely brought for the reason that the plaintiff had not submitted proper proofs of his disability, or waited until the expiration of the time given to the defendant to make payments of claims of this character under its constitution and by-laws. The supreme record keeper is made the financial secretary of the order, keeps all of the books and proceedings, signs the orders for the payment of money, and appears to be the general active officer of the order subject to the board of trustees. His letter to the plaintiff's attorney is in effect that it was useless for him to submit proofs of disability as his claim would be rejected. We think that this was a waiver on the part of the defendant of the necessity of presenting proofs of disability, and with complying with the formal procedure required by the defendant's order to perfect the plaintiff's claim. (*Payn* v. *Mutual Relief Society*, 17 Abb. N. C. 53, 57; *Grattan* v. *The Metropolitan Life Insurance Company*, 80 N. Y. 281.)

The trial court directed a verdict in favor of the plaintiff for $1,000, and the interest thereon from the commencement of the action. This was done upon the theory that the certificate issued to the plaintiff became the contract between the parties, and that under it the plaintiff was entitled to recover if his injury was permanent, even though it was not total. There is no question but that his injury was permanent. It would have been permanent had he but lost the end of one finger at the first joint. But would such an injury entitle him to the endowment under the contemplation of the parties? The plaintiff in his application for membership in the defendant's order states, " I hereby agree that these statements, with this application and the constitution of 'the Supreme Tent of the Knights of the Maccabees of the World,' shall form the basis of the contract for endowment." The certificate issued to him, and which it is claimed constitutes the contract, provides, as we have seen, that in case of permanent or total disability, or upon attaining the age of seventy years, he will be entitled to receive one-half of the endowment " as provided in the laws of the order." We thus have the certificate referring to the laws of the order as fixing his rights to recover for his disability, and his express agreement in his application making his statements therein and the constitution of the order the basis of the contract between them for his endowment. It con-

sequently appears to us that the constitution becomes a part of the contract.   It was so treated in the case of *Demings* v. *The Supreme Lodge Knights of Pythias of the World* (131 N. Y. 522).

The constitution in force at the time the plaintiff became a member of the defendant's order provides (article 4, section 13): "A total and permanent disability to perform or direct any kind of labor or business, or upon reaching the age of seventy years, shall entitle a member holding a certificate of endowment, so disabled or aged, to the payment of one-half of the endowment to which he would be entitled at death."   Here we have a definition or a description of the disability that would entitle the plaintiff to recover.   It is not only permanent, but total, so as to be unable to perform or direct any kind of labor or business.   It is not limited to the business in which the plaintiff was engaged at the time of his injury, but it is in the broadest language possible to use, "a total and permanent disability to perform or direct *any* kind of labor or business."   A total disability is ordinarily one of fact, and is for the jury.   It must be determined from the facts and circumstances disclosed in each case.   That which would be total disability in one case might not be in another.   The loss of a hand by a lawyer might interfere but slightly in the transaction of his business, or in the performance of his work.   Whilst to a man who had learned a particular trade, by which he had always earned his living, and was entirely ignorant of all other trades or business, it might prove to be a much more serious disability.   Ordinarily, the loss of the fingers of the hand does not constitute total disability from the performance of any kind of labor or business.   (*Knapp* v. *The Preferred Mutual Accident Association of New York*, 53 Hun, 84; *Saveland* v. *Fidelity & Casualty Company*, 67 Wis. 174; *Lyon* v. *The Railway Passenger Assurance Company*, 46 Iowa, 631; *Young* v. *Travelers' Insurance Company*, 80 Me. 244; *Sawyer* v. *United States Casualty Company*, 1 Bigelow Life & Accident Insurance Reports, 289; *Hooper* v. *The Accidental Death Insurance Company*, 2 id. 573; Bacon's Benefit Societies & Life Insurance, §.295; Cook on Life Insurance, § 108; 4 Harvard Law Review, 176.)

We are, therefore, unable to see how the judgment can be sustained under the old constitution.

On the 8th day of February, 1887, the constitution was amended.

The amended constitution provides that " a member who, by reason of a disability incurred after admission to endowment membership, becomes unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood, shall be deemed entitled to disability benefits." The amended constitution further provides that in case of such disability the benefits that he shall be entitled to receive are " annually one-tenth part of the sum for which his endowment certificate is issued." So that under the amended constitution the plaintiff would be entitled to receive, if disabled, one-tenth of $2,000 annually instead of $1,000 in a gross sum, as provided under the former constitution. And the disability which shall entitle him to the receipt of this annual provision is where he is unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood.

The trial court was of the opinion that the amended constitution had no application to the case; that the order could not, by an amendment of its constitution, change the rights of the plaintiff under his contract. We are not able to concur in this view. As we have seen, the plaintiff, in his application, agreed that the constitution of the order should be the contract. The constitution then provided that it might be altered or amended as to the laws governing the endowment funds by a two-thirds vote of the members present at a regular meeting of the supreme tent, or at a special meeting called for that purpose. The supreme tent was composed of delegates elected by the certificate holders of the subordinate tents in the different States and Canada. The plaintiff, as a certificate holder, was entitled to vote for the person who should represent him as the delegate from the Macedonian Tent, the tent of which he was a member. He thus had a voice in determining whether or not there should be an amendment of the constitution. And the amendment, when made, must be deemed to become a part of the provisions of his contract. The amended constitution, therefore, became operative and binding upon him as well as the other certificate holders of the order. (May v. New York Safety Reserve Fund Association, 13 N. Y. St. Repr. 66.)

His right to recover should, therefore, be determined by the provisions of the new or amended constitution. The evidence in the

case clearly shows that the plaintiff is totally disabled from performing the duties of a switchman upon the railroads, and that for many years he has been engaged in that kind of labor. Whether he can now earn a livelihood by some other business was a question of fact which, had it not been waived, should have been submitted to the jury. The defendant's counsel asked the court to direct a verdict in the case, and did not thereafter request to have this matter submitted to the jury. He thereby left it for the determination of the trial court, and that court having directed a verdict in favor of the plaintiff, must be deemed to have determined the fact against him.

The amount of the verdict, however, should have been limited to the first installment of $200 falling due under the constitution, with the interest thereon from the date of the commencement of this action.

The verdict should, therefore, be modified by reducing the amount thereof to the sum of $200, with interest thereon from the date of the commencement of this action, being the amount of the first installment due under the amended constitution, and the verdict so modified affirmed and judgment ordered thereon for the plaintiff, with costs in the trial court. but without costs of this motion to either party.

All concurred.

Defendant's motion for a new trial denied and judgment ordered for the plaintiff on the verdict modified, as indicated in the opinion, with costs in the trial court, but without costs of this motion to either party.