JOHN G. BALL vs. NORTHWESTERN MUTUAL ACCIDENT ASS'N.

Submitted on briefs Dec. 4, 1893.    Affirmed Feb. 1, 1894.

No. 8448.

**Forfeiture of mutual accident policy by nonpayment of assessment.**
Forfeitures are not favored in law, and he who claims one must show a fairly clear right to insist upon it. *Held*, that the plaintiff had not, by his acts, forfeited his right to recover indemnity money of defendant on its accidental insurance certificate issued to him.

Appeal by defendant, the Northwestern Mutual Accident Association, a corporation, from an order of the District Court of Hennepin County, *William Lochren*, J., made April 1, 1893, denying its motion for a new trial.

Defendant was incorporated under Laws 1885, ch. 184 to do casualty insurance business at Minneapolis on the co-operative or assessment plan, and on December 16, 1891, insured John G. Ball the plaintiff, an electrician, against bodily injury by external violent and accidental means; and agreed to pay him as indemnity the value of his time lost thereby, not exceeding twelve dollars per week, while he should be thereby immediately and entirely disabled from transacting business pertaining to his occupation. He agreed to pay all assessments made by it upon him not exceeding $15 per annum and further agreed that his membership and insurance should cease and determine whenever he should fail to make such payment, and that notice mailed postage prepaid, to his last address given, should be sufficient notification of the making of the assessment, and that one calendar month should be allowed for the payment of any such assessment. On January 1, 1892, it made an assessment of $3.50 upon him and mailed notice thereof to his address postage prepaid. He did not receive this notice and failed to pay the assessment.

On January 30, 1892, plaintiff while lifting a heavy piece of machinery in his occupation at Fargo, North Dakota, was injured, and disabled for sixty-eight days following. The value of his time was then $6 per week. He earned during the time four dollars in some clerical work. He made and served proofs of his injury. Upon the outside of the envelope containing plaintiff's policy and delivered to him with it, was a statement, as follows:

"First premium payable Feb. 1, 1892, and quarterly, semiannually or annually thereafter."

The plaintiff brought this action August 11, 1892, to recover $55 and interest. Defendant denied liability for more than $2 for the two days in January. On the trial a jury was waived, the court found for plaintiff, ordered judgment for $51.50 and interest, and filed the opinion set forth and adopted as the opinion of this court. Defendant moved for a new trial and being denied appealed.

*James O. Pierce*, for appellant.

Plaintiff was not excused from paying his assessment on February 1, 1892, because he had already been injured and there might ultimately be something coming to him in the way of indemnity.

Until the indemnity had been regularly claimed and allowed, it was not payable to plaintiff, so as to constitute an offset. *Wheeler* v. *Connecticut Mut. Life Ins. Co.*, 82 N. Y. 543; *Hollister* v. *Quincy Mut. Fire Ins. Co.*, 118 Mass. 478; *Mutual Life Ins. Co.* v. *Girard Life Ins. Co.*, 100 Pa. St. 180; *Willcuts* v. *Northwestern Mut. Life Ins. Co.*, 81 Ind. 300; *Leffingwell* v. *Grand Lodge A. O. U. W.*, 86 Ia. 279.

It is the loss of time which creates the cause of action, not merely the injury. This was two days time, if the defendant is right in its contention that plaintiff's membership terminated on February 1, 1892. If, however, the reasoning of the trial court is correct, that plaintiff continued a member for a calendar month after February 1, 1892, then there was no cause of action accruing after February 29, 1892.

*Wilson & Van Derlip* and *W. F. Ball,* for respondent.

In the case of mutual life or fire insurance policies, it is well established that the non-payment of assessments falling due after the death or loss has occurred will not avoid the policy. *Seyk* v. *Millers' Nat. Ins. Co.*, 74 Wis. 67; *Grand Lodge* v. *Besterfield*, 37 Ill. App. 522; *Elmer* v. *Mutual Ben. Life Ass'n*, 64 Hun 639.

The principle underlying these cases is applicable here. The non-payment of assessments, falling due after the injury, cannot affect the liability of the defendant under the policy. The amount of damage incurred by the insured through his injury is determined by ascertaining the length of time during which he is incapacitated from work by the injury. His damages are the amount he would have earned as wages had he not been injured. The fact that this basis for calculation is used, cannot alter the fact that the insurer's liability attaches as soon as the accident or injury occurs, and remains the same so far as that injury is concerned, no matter how many future assessments remain unpaid.

Plaintiff's membership did not cease on February 1, or on March 1, 1892. On January 1, 1892, defendant made an assessment upon certain of its members, but plaintiff never received notice thereof, and he had the right to rely on the notice endorsed on the envelope containing his policy.

The cases cited by defendant are inapplicable to the peculiar facts of this case.

BUCK, J.   This action was brought to recover on one of the defendant's insurance policies for a bodily injury suffered by accidental means.

The case was tried by the court without a jury, and the facts sufficiently appear in the opinion of the lower court, which is hereinafter quoted.

Upon the trial the court below decided one of the principal questions in favor of the defendant, and the other in favor of the plaintiff, and ordered judgment against the defendant for the sum of $51.50 and interest from August 11, 1892, and the costs and disbursements.   The opinion of the court below upon the question which it decided in favor of plaintiff is so full and satisfactory that we adopt it as the opinion of this court in this case.   It is as follows:

"Forfeitures are not favored, and a party who claims a forfeiture must show a fairly clear right to insist upon it.   Under this certificate, notice of assessment, mailed, postage prepaid, to the last address of the member given, is stipulated to be sufficient notice, and one calendar month after such notice is allowed for the payment of the assessment.   The meaning of this is that the assessment is payable at once upon such notice given; but the member is allowed the entire month following the notice in which to make payment, and before his certificate shall lapse, or forfeiture of membership result.   From the stipulated facts it appears that the assessment, which was the first one made upon plaintiff, of $3.50, was made January 1, 1892, and that notice thereof was duly mailed to plaintiff, postage prepaid, at his address, and that it was never received by plaintiff.   Although, from the language of the stipulated facts, it does not appear very clearly on what day this notice was so mailed, counsel, on the argument, on both sides, assumed and evidently understood the stipulated facts as stating that it was so mailed January 1, 1892, and I shall so regard it.

"The envelope in which plaintiff received his certificate from defendant (and which, together with the certificate, was put in evidence) contains, among other notices indorsed upon it, the follow-

ing: 'First premium payable Feb. 1, 1892, and quarterly, semi-annually, or annually, thereafter.' The word 'premium,' here, is evidently a mistaken use of the word, as there were no payments that could with propriety or accuracy be called premiums, aside, perhaps, from the membership fee. But the language following, to the effect that it was to be repeated at intervals, shows that assessments were meant; and the word would in the connection in which it was used, be understood to signify and refer to future assessments.

"It is stipulated that plaintiff had no actual notice of the action of the board of directors in making the assessments, other than as shown on said envelope, which has nothing on the subject except the words above quoted.

"These words amount to a notice or representation by defendant to the plaintiff, at the time of issuing the certificate, that the first assessment under it would be payable February 1, 1892. The natural import of this is that the assessment would be made or notice of it given at that date, or the matter put in such situation that it could then, and not at an earlier date, be paid; and from the stipulations in the policy one would fairly understand that there would be one calendar month after notice mailed not earlier than that date in which to pay it. The plaintiff, receiving such indorsed notice, might be misled, and take no precautions to get mailed notices of an earlier date, or might give his address at a place he expected to go to at or after that date. No one could fairly understand from the language used in this indorsement that the first assessment referred to was payable January 1, 1892, and at all times during that month, and that February 1, 1892, was the very last day of grace for payment to prevent a forfeiture.

"In this case the plaintiff, having received no other notice, was entitled to rely on the notice contained in the indorsement on the envelope, and upon the expectation that he could not be in default until the lapse of the calendar month after notice of the first assesment mailed to him on or after February 1, 1892; for though such provisions as this certificate contains as to forfeiture upon default are reasonable, and will be enforced, yet it is only against such as are guilty of negligence or laches, or willfully refrain from paying

their assessments.    They cannot be enforced against members, where the company has given them a notice tending and liable to mislead them, and deprive them of an opportunity of paying, and who have never received any other notice tending to correct the misleading notice.

"Plaintiff's letter of February 9, 1892, indicates that he then knew that there was an outstanding assessment against him, of $3.50, due the 1st of February.    How he learned it, does not appear, except that it was not from notice from the company.    That he did not learn when it was assessed, is admitted by the stipulation that he had no knowledge of the action of the board of directors.    The word 'due' is only equivalent to 'payable;' and if he heard in some indirect way, before February 9, 1892, that he had been assessed $3.50, he would still have the right to assume that such assessment was not made earlier than February 1st, and that he would have a calendar month after formal notice mailed to him, within which to pay it.    This letter does not, therefore, affect the case.    Neither does the defendant's letter of March 4, 1892.    Although that letter states that the notice of assessment was mailed January 1, 1892, it is not of itself a notice asking the plaintiff to pay the assessment, but an assertion that the time for such payment had passed, and the plaintiff's membership ended.    No notice would be effectual to support a forfeiture which did not give an opportunity for payment.

"In view of the subsequent action of the defendant, it seems probable that its officers construed the notice indorsed on the envelope as a notice that February 1, 1892, would be the last day of grace for the payment of the first assessment, and its counsel argues that it should be so construed.    But that is not the natural import of the language used, and defendant had no right to expect any one would so interpret it.    The fact that counsel, in drawing up the stipulation of facts, has used the same words 'due' and 'payable' with the same lack of accuracy, whether purposely or inadvertently, cannot change the meaning of the words.

"But even if the word 'payable' can be considered ambiguous, or capable of being used in more than one sense with reference to time of payment, it is a word which defendant selected, and should there-

fore be construed against the defendant, in accordance with a familiar and equitable rule.    The assessment should, I think, be deducted.    William Lochren, Judge."

The order appealed from is affirmed.

(Opinion published 57 N. W. Rep. 1063.)